LEMON, APPELLEE, *v.* LEMON, APPELLANT.

(No. 87 CA 17—Decided July 20, 1988.)

*Will Kernen,* for appellee.
*Charles J. Lantz* and *Jeffrey Feyko,* for appellant.

GREY, P.J. This is an appeal from a judgment of the Hocking County Common Pleas Court granting the parties a divorce and dividing the marital assets between the parties. We reverse.

The record reveals the following facts. On August 25, 1986, Larry Lemon filed a complaint for divorce against Linda Lemon. On September 2, 1986, not yet having received Mr. Lemon's complaint, Linda Lemon filed a similar complaint against Mr. Lemon.[1] Each of the complaints alleged gross neglect of duty and extreme cruelty, sought custody of the one unemancipated child and a division of the marital assets and financial obligations.

The trial court held a hearing on the matter on January 12, 1987. One major area of dispute was the disposition of Mr. Lemon's not yet vested pension. On February 27, 1987, the trial court issued a memorandum opinion. On March 6, 1987, Mrs. Lemon requested that the court issue its Findings of Fact and Conclusions of Law. The court denied Mrs. Lemon's request stating that the memorandum opinion contained sufficient findings of fact and conclusions of law pursuant to Civ. R. 52. On June 9, 1987, the trial court filed its formal judgment entry granting a decree of divorce.

In the decree, the court granted both Mr. and Mrs. Lemon a divorce on the grounds of gross neglect. The court divided the personal property of the parties according to their respective requests during the hearing, and ordered the marital home sold for not less than $35,000. If the home did not sell within the time specified by the court, Mr. Lemon was ordered to file a partition action. The court further ordered that the marital obligations of the parties be paid from the proceeds of the sale and that the remaining net balance be equally divided between the parties.

The court granted custody of the minor child to Mrs. Lemon, ordered that Mr. Lemon pay thirty-five dollars per week in child support, and granted him reasonable and liberal visitation rights. The court further ordered that Mr. Lemon pay thirty-five dollars per week to Mrs. Lemon until two years from September 24, 1986. In its memorandum opinion the trial court expressly found that Mr. Lemon's pen-

---

[1] Mrs. Lemon filed a motion to consolidate the two complaints which appears to be implicitly granted by the court's actions in this matter.

sion had no present value. Mrs. Lemon appeals the trial court's judgment and assigns four errors.

First Assignment of Error:

"The trial court erred to the prejudice of the Defendant in granting judgment for divorce to Plaintiff on grounds of gross neglect of duty, said decision being against the manifest weight of the evidence and an abuse of discretion."

R.C. 3105.01(G) empowers a court of common pleas to grant divorces on the grounds of gross neglect of duty. Mrs. Lemon asserts that the trial court erred and abused its discretion in granting a divorce to Mr. Lemon as based upon that ground. We disagree.

Clearly, it is within the discretion of the court, based on the evidence presented, to decide whether it will grant a divorce to a party or parties and on what grounds that divorce will be granted. An "abuse of discretion" connotes more than just an error in judgment. It implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore* v. *Blakemore* (1983), 5 Ohio St. 3d 217, 5 OBR 481, 450 N.E. 2d 1140; *Teeter* v. *Teeter* (1985), 18 Ohio St. 3d 76, 18 OBR 106, 479 N.E. 2d 890.

The record reveals adequate evidence presented by both Mr. and Mrs. Lemon to support the court's decision to grant each a divorce on the ground of gross neglect of duty. Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *Ross* v. *Ross* (1980), 64 Ohio St. 2d 203, 18 O.O. 3d 414, 414 N.E. 2d 426. A review of the record indicates sufficient evidence to support the trial court's granting of a divorce to each party and the trial court did not abuse its discretion in doing so. Mrs.

Lemon's first assignment of error is without merit and is overruled.

Second Assignment of Error:

"The trial court's failure to consider plaintiff's pension plan as a marital asset was against the manifest weight of the evidence and an abuse of discretion and thus constitutes reversible error."

Specifically, Mrs. Lemon asserts that the trial court erred in failing to consider her husband's unvested pension plan a marital asset subject to division upon the parties' divorce. We agree.

The starting point for any court division of marital property or award of alimony is R.C. 3105.18, which provides in pertinent part: [1]

"(A) In divorce, dissolution of marriage, or alimony proceedings, the court of common pleas may allow alimony it considers reasonable to either party.

"The alimony may be allowed in real or personal property, or both, or by decreeing a sum of money, payable either in gross or by installments, as the court considers equitable.

"(B) In determining whether alimony is necessary, and in determining the nature, amount, and manner of payment of alimony, the court shall consider all relevant factors, including, but not limited to, the following:

"(1) The relative earning abilities of the parties;

"(2) The ages, and the physical and emotional conditions of the parties;

"(3) The retirement benefits of the parties;

"(4) The expectancies and inheritances of the parties;

"(5) The duration of the marriage;

"(6) The extent to which it would be inappropriate for a party, because he will be custodian of a minor child of

the marriage, to seek employment outside the home;

"(7) The standard of living of the parties established during the marriage;

"(8) The relative extent of education of the parties;

"(9) The relative assets and liabilities of the parties;

"(10) The property brought to the marriage by either party;

"(11) The contribution of a spouse as homemaker."

Mrs. Lemon asserts that R.C. 3105.18(B)(3) required the court to consider Mr. Lemon's unvested pension plan when dividing the parties' marital assets. Clearly, vested pension plans are marital assets subject to division upon divorce. *Teeter* v. *Teeter, supra; Briganti* v. *Briganti* (1984), 9 Ohio St. 3d 220, 9 OBR 529, 459 N.E. 2d 896; *Blair* v. *Blair* (1983), 11 Ohio App. 3d 117, 11 OBR 171, 463 N.E. 2d 423; and *Moser* v. *Moser* (1982), 5 Ohio App. 3d 193, 5 OBR 427, 450 N.E. 2d 741. There is, however, no current Ohio case law on whether an unvested pension plan is a divisible marital asset.

R.C. 3105.18(B)(3) does not distinguish between vested and unvested pension plans. The language of R.C. 3105.18, though, is quite broad. A reasonable construction is that the legislature intended courts to consider factors not presently within the possession of the parties, for example, expectancies or inheritances. An expert witness, an economics professor, testified that Mr. Lemon's pension plan had no present value from an accounting or economic point of view. While we find such a view professionally accurate, we do not believe the legislature intended to adopt such a narrow view.

An unvested pension plan has value. It is the trial court's responsibility to determine, as best it can, the value of an unvested pension plan as a marital asset. For example, the court should take into consideration the time left before the pension becomes vested, the length of the marriage between the parties, and the contributions of the parties both primarily and secondarily to the pension plan.

This is, of course, likely to be difficult for the trial court because vesting is a contingent event. Nonetheless, contingent events do happen. The trial court found that the pension had "no market value at the present time." However, the unvested pension had some value. Social Security, great unfunded and unvested scheme that it is, provides some benefits and a court must take Social Security benefits into account. *Beyer* v. *Beyer* (1979), 64 Ohio App. 2d 280, 18 O.O. 3d 267, 413 N.E. 2d 844.

Perhaps the most telling proof that this unvested pension had at least some value is Mr. Lemon's introduction of expert testimony on the issue for the purpose of obtaining the pension benefit for himself alone. There is a discussion of how other states have treated this issue in Annotation (1979), 94 A.L.R. 3d 176. While the treatment of this issue by other states is informative, we believe that the language in R.C. 3105.18 is clear, and that an unvested pension may be a marital asset subject to the division of property in a divorce action.

We do not hold that Mrs. Lemon is entitled to division of this unvested pension. We do hold that, in light of the fact that this was a marriage of twenty-five years, that both parties contributed income to the household, that the wife contributed as a homemaker, and that the pension will vest in two and one-half years, the court erred in refusing to consider the unvested pension as a marital asset because it has no present value.

Thus, the trial court erred in not

considering the value of Mr. Lemon's pension plan in its division of the marital assets. Mrs. Lemon's second assignment of error is sustained.

Third Assignment of Error:

"The trial court committed prejudicial error and abused its discretion in that the division of property and award of alimony to the defendant is grossly inadequate and against the manifest weight of the evidence."

Trial courts are given broad discretion in matters involving the division of marital assets or the award of alimony. A potentially equal division should be the starting point of analysis for the trial court. *Cherry* v. *Cherry* (1981), 66 Ohio St. 2d 348, 20 O.O. 3d 318, 421 N.E. 2d 1293. However, equitable need not mean equal. *Id.* In an effort to arrive at such a division a trial court must consider all the relevant factors as set forth in R.C. 3105.18(B), *supra.* A review of the record reveals that with the exception of the trial court's failure to consider that Mr. Lemon's pension plan had a divisible value, the trial court carefully considered R.C. 3105.18(B) factors. Thus, the trial court did not abuse its discretion in its division of the remaining marital property or its award of temporary alimony to Mrs. Lemon. Assignment of error three is overruled.

Fourth Assignment of Error:

"The trial court erred in its division of the marital assets in failing to consider the element of aggression of the plaintiff in the break up of the marital relationship."

R.C. 3105.18 does not require a trial court to consider fault or marital aggression in its division of marital assets or award of alimony. It appears from that language that the legislature did not intend marital misconduct to be a definitive factor in the division of marital assets. Absent an abuse of discretion on the part of the trial court,

we, as a reviewing court, may not reverse a trial court's decision. *Blakemore, supra; Teeter, supra.* The trial court did not abuse its discretion in failing to consider marital fault or aggression in determining the division of property and alimony award between the parties. Mrs. Lemon's fourth assignment of error is wholly without merit and is overruled.

Based on this court's ruling on Mrs. Lemon's second assignment of error, we reverse the decision of the trial court on the issue of Mr. Lemon's unvested pension plan and remand the matter for proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

ABELE, J., concurs.

STEPHENSON, J., dissents.

STEPHENSON, J., dissenting. I respectfully dissent from the judgment and opinion sustaining appellant's second assignment of error and reversing the judgment of the court below. Appellant's second assignment of error asserts that the trial court's failure to consider appellee's pension plan as a marital asset was against the manifest weight of the evidence and an abuse of discretion.

At trial, the uncontroverted expert testimony of economics professor Richard Vedder was that since the Ohio Operating Engineers Pension Plan, of which appellee was a member, had vested benefits after ten service years and appellee had only worked the equivalent of seven and a half service years, there was no present value to such pension plan. The pension plan was non-contributory and completely funded by appellee's employer. On February 27, 1987, the trial court filed a memorandum opinion which stated, in pertinent part, as follows:

"Very little dispute exists as to the extent and value of marital assets of the parties. The Court finds from the evidence that the pension contribution of the Plaintiff has no market value at the present time."

The trial court then proceeded to divide the marital property and award sustenance alimony to appellant. On June 9, 1987, the trial court entered a judgment which essentially reflected its earlier memorandum decision, but did not explicitly refer to appellee's pension plan.

In reviewing a judgment of the trial court awarding and distributing property in a divorce action, the reviewing court is limited to determining whether, considering the totality of the circumstances, the trial court abused its discretion. *Verplatse* v. *Verplatse* (1984), 17 Ohio App. 3d 99, 17 OBR 161, 477 N.E. 2d 648; *Teeter* v. *Teeter* (1985), 18 Ohio St. 3d 76, 18 OBR 106, 479 N.E. 2d 890. An abuse of discretion connotes more than just an error in judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Teeter, supra* at 76-77, 18 OBR at 107, 479 N.E. 2d at 891; *Blakemore* v. *Blakemore* (1983), 5 Ohio St. 3d 217, 219, 5 OBR 481, 482, 450 N.E. 2d 1140, 1142.

In determining whether alimony is necessary, and in determining the nature, amount, and manner of payment of alimony, the court shall consider all relevant factors, including, but not limited to, the retirement benefits of the parties. R.C. 3105.18(B)(3). The position of the majority opinion herein is that an unvested pension plan has value inherently and that it is the trial court's responsibility to determine the value of an unvested pension plan as a marital asset.

A spouse's vested interest in a profit-sharing and pension plan earned during marriage constitutes a marital asset subject to division pursuant to R.C. 3105.18(B) by the court in a divorce action. *Teeter, supra; Moser* v. *Moser* (1982), 5 Ohio App. 3d 193, 5 OBR 427, 450 N.E. 2d 741; *Bohnlein* v. *Bohnlein* (1983), 11 Ohio Misc. 2d 16, 11 OBR 179, 463 N.E. 2d 666. With respect to the issue of whether an unvested interest in a profit-sharing and pension plan earned during marriage constitutes a marital asset, there appears to be a split of authority.

One Ohio treatise states that vested or non-vested pension and retirement benefits to the extent they were earned during marriage are marital property, regardless of (1) how payments were made to the fund, *i.e.,* by payroll deduction and/or by employer contributions; (2) whether they have matured; (3) when and under what contingencies the benefits are payable; and (4) when the fund can be subjected to garnishment or execution. Baldwin's Ohio Domestic Relations Law (1987) 260, Section 25.02. Conversely, retirement or pension benefits that have not vested at all have been held explicitly or implicitly by courts in other noncommunity property states having statutes providing for equitable division of the spouses' property upon divorce, not to be subject to division or direct consideration in making such equitable property divisions. Annotation, Pension or Retirement Benefits as Subject to Award or Division by Court in Settlement of Property Rights Between Spouses (1979), 94 A.L.R. 3d 176, 242.

In the instant case, there appear to be two distinct considerations involved: (1) the consideration of unvested pension plans in the R.C. 3105.18 division of marital property, and (2) the valuation of such property. As noted in *Alexander* v. *Alexander* (1985), 20 Ohio App. 3d 94, 20 OBR 115, 484 N.E. 2d 1068, there is a distinction between a court's duty to

consider a party's assets and a court's power to divide property. Assuming *arguendo* that an unvested pension plan is properly considered a marital asset, Baldwin's Ohio Domestic Relations Law, *supra,* it is not apparent herein that the trial court failed to consider the unvested pension plan. Indeed, in its memorandum opinion, the trial court specifically considered "pension contributions" in its opinion. However, based upon the uncontroverted expert testimony at trial, the court below then determined that the value of the plan was zero. Therefore, the trial court considered the pension plan, *i.e.,* it did not automatically equate its unvested nature to mean that it was not a marital asset, but rather, based upon the uncontroverted evidence at trial, determined that its present value was zero.

Possible solutions to this valuation problem are outlined in *In re Marriage of Hobbs* (Ill. App. 1982), 442 N.E. 2d 629, 632, where the court stated, in pertinent part, as follows:

"Appellate decisions of this state have established that pension rights, whether matured, vested or not vested, contributory or non-contributory, are property under section 503 of the Act (Ill. Rev. Stat. 1979, ch. 40, par. 503). (See *In re the Marriage of Bodford* (1981), 94 Ill. App. 3d 91, 92, 49 Ill. Dec. 633, 634, 418 N.E. 2d 487, 488.) Where one spouse has acquired a right to potential pension benefits, there is no way the other spouse may be awarded a defined interest in the benefits without a determination of their value (*In re the Marriage of Evans* (1981), 85 Ill. 2d 523, 55 Ill. Dec. 529, 426 N.E. 2d 854), at least in the case of a present award based on the discounted value of the future payments. This presents a problem when the actual value of the benefits depends on future contingencies.

"An excellent discussion of this problem and a well-conceived solution to it are found in *In re the Marriage of Fairchild* (1982), 110 Ill. App. 3d 470, 66 Ill. Dec. 131, 442 N.E. 2d 557. As the *Fairchild* court concluded:

" '*The dilemma, then, is that while it is unfair to ignore the value of non-vested benefits in the division of marital property, those benefits in some instances being the only significant marital asset, it is also unfair to effect a present division of the marital property utilizing an actuarial value of those benefits computed in reliance on speculative, albeit actuarially accepted assumptions.* \* \* \*

" '(R)eserving jurisdiction over the future benefits and effecting a subsequent division of the actual monetary benefits had the dual advantage of allocating equally between the parties the risk that the rights may never vest and enabling the court to better determine the actual proportion of future benefits that accrued to each party during the marriage.' " Keating, *Recent Decisions,* Ill. Bar J., Vol. 70, No. 9, page 582, 585.

"(*In re the Marriage of Fairchild* [1982], 110 Ill. App. 3d at 475, 66 Ill. Dec. at 134, 442 N.E. 2d at 560.)

"A similar concept had been suggested earlier:

" 'In those instances where it is difficult to place a present value on the pension or profit-sharing interest due to uncertainties regarding vesting or maturation, or when the present value can be ascertained but the type, or lack, of other marital property makes it impractical or impossible to award sufficient offsetting marital property to the non-employee spouse, then the trial court in its discretion may award each spouse an appropriate percentage of the pension to be paid "if, as and when" the pension becomes payable. (*In re Marriage of Brown* [1976], 15 Cal. 3d 838, 126 Cal. Rptr. 633, 544 P. 2d 561; Kalcheim, *Marital Property,*

*Tax Ramifications, and Maintenance: Practice Under the Illinois Marriage and Dissolution of Marriage Act — A Comparative Study,* 66 Ill. B.J. 324, 335 [1978]; 42 Mo. L. Rev. 143, 150 [1977].)'

"It can be seen that both solutions share the common advantage of dividing the pension benefits at a time when, at least in terms of periodic payments, they are certain. Given this common advantage, we direct the trial court, upon the necessary remand of this cause, to reserve jurisdiction over the future benefits. Whether it makes a present percentage allocation of those benefits, or reserves this decision for the future, is left to the court's sound discretion." (Emphasis added.)

The approach taken by the majority opinion herein would place the trial court in the unenviable position of assigning a present value to unvested pension benefits where there is no evidence in the record of any present value of such benefits and where the vesting of benefits would be, in part, based upon contingencies and speculation. Under these circumstances, it might have been preferable for the trial court to have ordered additional sustenance alimony to appellant in an amount equal to a percentage of the pension that would vest after two and one-half more service years. *Alexander, supra,* at 97, 20 OBR at 118, 484 N.E. 2d at 1071; *Hobbs, supra.* However, as noted in *Hobbs, supra,* the trial court retains jurisdiction to entertain a motion to modify sustenance alimony in the future, *Blair* v. *Blair* (1983), 11 Ohio App. 3d 117, 119, 11 OBR 171, 174, 463 N.E. 2d 423, 425, once the pension funds become payable. In this limited context, the trial court did not abuse its discretion in assessing a zero present value to the unvested pension plan and failing to divide the same where the overall property distribution appears to have been properly entered.