OPINION
{¶ 1} On January 31, 1992, appellant, Frances Mishler, and appellee, John Mishler, were granted a divorce. Incorporated into the divorce decree was the parties' separation agreement wherein the parties provided for the distribution of appellee's pension plan pursuant to a subsequent Qualified Domestic Relations Order (hereinafter "QDRO"). A QDRO was filed on March 8, 1995, stating appellant was entitled to fifty percent of the accrued benefits earned by appellee as of the date of the divorce decree.
 {¶ 2} Appellee retired in November of 2002. Appellee's pension plan, Central States, Southeast and Southwest Areas Pension Fund, notified appellant that she would be receiving $131 of appellee's $3,000 monthly benefit.
 {¶ 3} On September 23, 2003, appellant filed a motion to amend the QDRO, requesting "the traditional coverture fraction of the benefits and accumulated interest which was intended" in the separation agreement. On September 26, 2003, the trial court (Judge James) signed and filed an amended QDRO.
 {¶ 4} On January 12, 2004, appellant filed a motion to amend the amended QDRO to include administrative changes requested by Central States. On same date, the trial court (Judge James) signed and filed a second amended QDRO.
 {¶ 5} On January 20, 2004, appellee filed a motion for relief from judgment from the January 12, 2004 QDRO. A hearing before Judge Stucki was held on February 17, 2004. By judgment entry filed February 18, 2004, the trial court denied the motion.
 {¶ 6} On March 30, 2004, appellant filed a motion to amend the second amended QDRO to include additional changes required by Central States. On April 1, 2004, the trial court (Judge Hoffman) signed and filed a third amended QDRO.
 {¶ 7} On April 7, 2004, appellee filed a motion to vacate the April 1, 2004 QDRO. By judgment entry filed same date, the trial court (Judge Stucki) vacated the third amended QDRO and set a hearing on the second amended QDRO for May 24, 2004. Following the hearing, the trial court (Judge Stucki) again vacated the third amended QDRO.
 {¶ 8} Appellant filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:
 I {¶ 9} "The trial court erred in granting appellee's motion to vacate appellant's amended qualified domestic relations order in direct contradiction to its prior orders allowing the qdro, resulting in a court approved qdro which is administratively impossible to execute by central states."
 I {¶ 10} Appellant claims the trial court erred in vacating the third amended QDRO. We agree.
 {¶ 11} In reviewing a trial court's decision regarding a QDRO, the abuse of discretion standard applies. Blair v. Blair (1983),11 Ohio App.3d 117. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v.Blakemore (1983) 5 Ohio St.3d 217.
 {¶ 12} The record in this case demonstrates a procedural quagmire. As usual, the best place to start is at the beginning. On January 31, 1992, the parties were granted a divorce. Incorporated into the divorce decree was the parties' separation agreement wherein the parties provided for the distribution of appellee's pension plan as follows:
 {¶ 13} "10. Pension Plan: Any accrued interest in the Teamsters Union Local 407 pension plan presently in the Husband's name shall be divided equally between the parties pursuant to a qualified domestic relations order (QDRO) which shall be filed in this case. * * *"
 {¶ 14} Over three years later, the QDRO was filed on March 8, 1995 and stated the following in pertinent part:
 {¶ 15} "It is ORDERED, ADJUDGED, and DECREED that the Alternate Payee's share of the Participant's accrued benefit shall be Fifty percent (50.00%) of the accrued benefits earned by the Participant as of January 31, 1992. However, if the Alternate Payee receives benefits before the Participant, and before the Participant's normal retirement age (65), the amount assigned to the Alternate Payee cannot exceed the actuarial present value of the Participant's accrued benefit as of the Alternate Payee's benefit effective date."
 {¶ 16} What follows is a series of ex parte motions to amend the QDRO, signed by various judges, with a motion for relief from judgment and a motion to vacate mixed in. The judgment entry appealed from is the May 24, 2004 entry by Judge Stucki wherein he vacated the third amended QDRO as follows:
 {¶ 17} "This matter was litigated before this Ct determined by JE filed 2-17-4. Thereafter, on 3-30-4 the plaintiff filed a motion to Amend 2nd Amended QDRO. This was presented Ex Parte to Judge Hoffman for signature even though Atty Ferrell clearly expressed a desire to be heard.
 {¶ 18} "The [plaintiff] is receiving an equal division of the marital coverture period of [defendant]'s pension as ordered in the court's orders.
 {¶ 19} "The Deft's motion to vacate is sustained and the Third Amended JE QDRO filed 4-1-4 is vacated held for naught. The stay request is moot."
 {¶ 20} In vacating the third amended QDRO and finding the matter was litigated by judgment entry filed February 17, 2004, the entry which denied appellee's motion for relief from judgment regarding the second amended QDRO, the trial court in effect permitted the second amended QDRO to stand which administratively is incorrect.
 {¶ 21} The first amended QDRO filed on September 26, 2003 was never appealed from. This QDRO stands. However, the language therein did not conform to Central States's requirements. Specifically, Central States requested an "end date of the marriage for the numerator of the coverture fraction and the deletion of an unnecessary paragraph." See, Plaintiff's Motion to Amend QDRO filed January 12, 2004.
 {¶ 22} In attempting to fix the amended QDRO, a second amended QDRO was filed on January 12, 2004. No appeal was taken. Instead, appellee filed a motion for relief from judgment from the second amended QDRO. The trial court denied the motion after hearing on February 17, 2004.
 {¶ 23} The second amended QDRO did not conform to Central States's requirements. Specifically, Central States requested a beginning date, an end date to correspond to the date of appellant's death and the removal of language no longer applicable to the parties pertaining to survivor benefits. See, Plaintiff's Motion to Amend Second Amended QDRO filed March 30, 2004.
 {¶ 24} In attempting to fix the second amended QDRO, a third amended QDRO was filed on April 1, 2004. No appeal was taken. Instead, appellee filed a motion to vacate the third amended QDRO. The trial court vacated the third amended QDRO, held a hearing on May 24, 2004 and again vacated the third amended QDRO.
 {¶ 25} Appellee never appealed the original amended QDRO or the amended ones thereafter. A motion to vacate may not be used as a substitute for appeal. Doe v. Trumbull County Children's Services Board
(1986), 28 Ohio St.3d 128. Therefore, the first amended QDRO stands but is administratively ineffective. The second amended QDRO attempted to fix the errors, but further errors existed. The third amended QDRO attempted to fix the additional errors, but the trial court vacated this QDRO, finding the matter was determined by the denial of appellee's motion to vacate the second amended QDRO. What is in effect now is administratively ineffective.
 {¶ 26} Upon review, we find the trial court abused its discretion in vacating the third amended QDRO which attempted to bring the QDRO into compliance with the requirements of Central States.
 {¶ 27} The sole assignment of error is granted.
 {¶ 28} The judgment of the Court of Common Pleas of Stark County, Ohio, Domestic Relations Division is hereby reversed.
Farmer, P.J., Wise, J. and Boggins, J. concur.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Stark County, Ohio, Domestic Relations Division is reversed.